THE STATE EX REL. EDGAR C. ELLIS v. DARIUS A. BROWN, Judge of Circuit Court.—33 S. W. (2d) 109.

Court en Banc, October 17, 1930.

*Louis A. Laughlin, Raymond G. Barnett, W. B. Brown* and *Samuel A. Dew* for relator.

*Chet A. Keyes* for respondent.

RAGLAND, C. J.—Certiorari. Relator states the case as follows: "Jack Collins was on June 19, 1930, a qualified and registered

voter of the 5th precinct of the 16th Ward of Kansas City, Missouri, and his name had been so returned on the registration list as a voter by the board of registration to the board of election commissioners. On that date was held, in accordance with law, a regular intermediate registration, preliminary to the ensuing primary election to be held in said city on August 5, 1930. It is admitted that said Collins was of legal age and had resided in Missouri and in said Kansas City the length of time required by law to be registered as a voter in said city. On July 30, 1930, said Collins moved out of said precinct and ward into the 2nd precinct of the 10th Ward, of said city.

"Section 29 of Laws of Missouri 1921, page 350, as amended by laws of the Second Extra Session 1921, page 29, provides that in the event of the change of residence by such a registered voter, after the close of registration from one precinct and ward to another, if he shall on or before the 10th day preceding the next ensuing election, apply to the board of election commissioners to have his name transferred from the precinct in which he is registered, said board shall cause him to be sworn and examined and his statement to be taken down in writing and signed and sworn to by him, and that if said board be satisfied that such change of residence has been made, and that he is entitled to have his name so transferred, they shall cause his name to be erased from the registry of his former precinct and transferred to the precinct in which he resides.

"Said Collins, however, failed to apply to said board on or before the 10th day preceding the said election of August 5, 1930. He did apply to said board on Friday, August 1, 1930, to have said transfer made, and said board refused to cause him to be sworn and examined, and entered an order denying his application, for the reason that it was not made on or before the 10th day preceding the ensuing primary election. On August 1, 1930, said Collins took an appeal to the circuit court from the order of the board denying his application, setting forth all the foregoing facts and attaching the exemplification of the said record of the board of election commissioners. Said appeal was filed on the 2nd day of August, 1930, with the Clerk of Division No. 2 of the Circuit Court of Jackson County, Missouri, of which respondent herein was and is the judge. On the same day relator, then a registered voter and a candidate for nomination for the office of Representative to Congress from the 5th Congressional District, at the said ensuing primary election, appeared in person and by attorney and filed a motion in said circuit court to dismiss said Collins's application or appeal on the ground that it appeared on the face of the record that the applicant failed to apply to the board of election commissioners for a transfer of his registration on or before the 10th day preceding the next ensuing election. This motion the respondent overruled, and the application

was thereupon heard on its merits, its statements found to be true, said application was by respondent sustained, and said board was ordered to erase applicant's name from the said precinct in which he was then registered and to transfer it to the said Second Precinct of the 10th ward where he then resided, and the clerk ordered to so notify said board of the action of the court. Thereupon, relator filed his petition in this court for a writ of certiorari, setting forth the contents and attaching true copies of said documents and records hereinbefore referred to."

The opinion which is to follow should be read in connection with the one handed down in State ex rel. Ellis v. Brown, 326 Mo. 627, 33 S. W. (2d) 104, a companion case, decided at this term. That this is also a "made case" is readily discernible from the unnecessary formalities so carefully observed "in taking the appeal" from the order of the board of election commissioners. However, it is not a moot case; it is entitled to the consideration that the importance of the question presented demands.

The controlling statute is as follows:

"Whenever any person who has been duly registered as a voter by the board of registration of the precinct in which he then resides, and whose name shall have been returned on the registration list as a voter by the board of registration to the board of election commissioners, after the close of registration shall change his residence from one precinct in said city to another, or from one part of such precinct to another part thereof, before the day of election next following his registration, and shall after making such change at any time on or before the tenth day preceding such election, apply to the board of election commissioners to have his name transferred from the precinct in which he is registered, or his residence changed from his former to his present residence in such precinct, said board shall cause him to be sworn and examined as to the facts of such change, and his statement shall be taken down in writing and signed and sworn to by him and duly certified by said board; if said board shall be satisfied that the applicant has changed his residence, as stated, and that he is entitled to have his name transferred and his place of residence changed, they shall first cause his name, where he moved from his former precinct, to be erased from the registry thereof, and transferred to the precinct in which he then resides, or if he has changed his residence from one place to another in said precinct they shall change his address on the register of such precinct, and note in the column of 'remarks' the precinct to which the transfer is made." [Sec. 29, Laws 1921 (2d Ex. Sess.), p. 29.]

It is the contention of relator that this statute is mandatory in respect to its provision that a registered voter who changes his residence after the close of registration shall apply to the Board of Elec-

tion Commissioners, *on or before the tenth day preceding the election,* to have his name transferred from the precinct in which he is registered to the one in which he then resides. If it is to be so construed, then it disfranchises all voters who change their residence within the period of ten days next before an election.

The Constitution provides that "all citizens of the United States . . . over the age of twenty-one years who have resided in this State one year, and in the county, city or town sixty days immediately preceding the election at which they offer to vote . . . shall be entitled to vote at all elections by the people." Can the Legislature limit or restrict the right so granted by requiring in addition that the citizen shall have resided at the precise place in the voting precinct at which he resides on the day of the election for a period of ten days immediately prior thereto? Clearly not unless such limitation or restriction is necessary for the registration of voters, which the Constitution itself requires in cities having a population of more than 10,000. It is claimed that the ten day provision is essential to the integrity of the registration in that it affords an opportunity for checking up transfers prior to the election, and thereby tends to prevent fraud in that respect. Whether that was the legislative purpose in inserting the provision, and whether it in fact serves such purpose, must be determined from a consideration of the Registration Act as a whole.

The Act provides for a general registration in every year in which a presidential election occurs, and an intermediate registration preceding every election held between general registrations. An intermediate registration is merely for the purpose of revising and supplementing the general registration, but in making it all the forms and requirements provided with reference to a general registration must be observed. It will be necessary therefore to outline the forms and requirements prescribed for a general registration, although the proceeding under review relates only to matters occurring at a revising one.

Four days for registration are provided by the Act: Monday, Tuesday, Wednesday and Thursday of the *sixth week* prior to the election. The registration is conducted in every precinct by a board of registry appointed by the board of election commissioners. During the progress of registration thereafter the board of registry transfers all names that have been registered to duplicate "verification lists," "arranging them according to the streets, avenues, alleys or courts, beginning with the lowest residence number, and placing them numerically, as nearly as possible, from the lowest up to the highest number." Immediately following the registration, that is on Friday and Saturday of the same week, two canvassers in each precinct, each having one of the said verification lists, together personally

canvass the precinct. If they find that any person upon their verification lists does not reside at the place designated thereby, they are required to make a check opposite his name. During the registration days the right of persons who have theretofore registered to be registered may be challenged by any registered voter, and if so challenged that fact is required to be noted, and when the verification lists are returned by the canvassers the names of the persons so challenged have a check mark placed opposite their names. The verification lists are then immediately delivered to the board of election commissioners, who cause notice to be given to each person opposite whose name a check mark has been placed, to appear before the board on one of the revision days. These days are the Tuesday, Wednesday, Thursday and Friday of the week *immediately following the registration and canvass.* During these days the board can not add any new names to the registration : its sole duty at that time is to purge the lists.

The Act further provides that persons who are unable to register on the regular registration days, owing to absence or illness, may be registered, if so entitled, by filing their applications not later than the *fourteenth day* preceding the election and appearing in person before the board of election commissioners on Monday, Tuesday or Wednesday of the *week preceding* the election; and further, that persons who after registering have changed their residence may have their names transferred upon the register by making application therefor *on or before the tenth day* preceding the election.

The foregoing is a general outline of the procedure prescribed by the Act in question for a registration of voters.

Section 24 provides that whenever any person claiming to be an elector of any election precinct has been denied the right to be registered by the precinct board of registration, he may on one of the days of revision make an application in writing to the board of election commissioners, and that "all of the proceeding before said board of commissioners *in examining such applications* shall be public." Section 28 provides that the precinct boards of registry shall, *in the forenoon of the next secular day after the last session provided for registration,* deliver the registers to the board of election commissioners who shall "at once" have copies of the registers made, in which the names shall be arranged in the same manner as required in making the verification lists, "and shall then cause such precinct register, under such arrangement, to be printed in plain, large type, in sufficient numbers to meet all demands; and upon application, a copy of same shall be given to any person in such precinct."

Other than the provisions of Sections 24 and 28 just referred to, there nowhere appears in the act any requirement or even suggestion, touching matters relating to registration, that the proceedings of

the board of election commissioners shall be open to the public, or that the registration lists shall be posted or published, or that the lists or records of the board shall be open to public inspection. To be more specific, there is no provision remotely suggesting that the applications of absentees and invalids for registration, or the applications for transfer of those who changed residence after registration, shall be listed and published or laid open for public inspection, or that the hearing on such applications shall be public. Nor is there any requirement or direction that the board of election commissioners cause a canvass to be made for the purpose of verifying the facts alleged in such applications. It is provided, however, in Section 34, that a supplemental list of all persons who have been transferred on the register or who have been registered as absentees or invalids shall be printed by the board ''and thereupon *on the day of election,* . . . be posted up at each precinct where such election is to be held, the original printed lists and the supplemental lists aforesaid.'' But it is manifest that this supplemental list is designed to thwart fraudulent voting, not fraudulent registration; the registration is then at an end; it is a fact accomplished. The filing and hearing of applications for transfer ten days or more before election would no doubt afford convenience to the board of election commissioners and render less difficult the making and printing of the supplemental list in time for use on election day; but if the ten-day provision serves any other purpose under the statutory scheme, it is not perceivable.

As the Act does not prescribe the consequences of a failure to comply with the time provision of said Section 29, and it further appearing from a consideration of the statute as a whole that said provision was intended merely to promote the convenient and orderly prosecuting of the work of registration, it must be held that the provision does not operate as a limitation upon the power of the board of election commissioners, nor, in consequence, upon that of the circuit court in the disposition of appeals.

A further thought suggests itself. If the ten-day provision is mandatory, persons desiring a transfer for dishonest or fraudulent purposes can in all cases make application therefor to the board of election commissioners prior to the tenth day preceding the election, and if such applications be denied can bide their time, and then a day or two before the election go before a division of the circuit court and at an *ex parte* hearing, on evidence of their own selection or concoction, secure the desired orders. On the contrary, the honest voter who changes residence within the ten days preceding the election will be disfranchised. These obvious results of such a construction could not have been intended by the Legislature.

In view of the conclusions reached our writ should be quashed. It is so ordered. *Gantt, Walker* and *White, JJ.*, concur; *Blair, Frank* and *Atwood, JJ.*, dissent; *Atwood, J.*, in a separate opinion in which *Blair* and *Frank, JJ.*, concur.

ATWOOD, J. (dissenting).—The reasons suggested in my dissenting opinion filed in the companion case of State ex rel. Ellis v. Brown, 326 Mo. 627, 33 S. W. (2d) 104, apply to the construction given by the majority opinion herein to Section 29 of the same act.

The majority opinion in this case further suggests that if the provisions of this section are construed as mandatory some honest voters may be disfranchised. In State ex rel. v. Mason, 155 Mo. 486, we upheld a more stringent provision requiring voters to reside twenty days in the precinct before voting. Whether or not the contemplated benefits of the statute outweigh possible hardships thereunder is a matter for legislative rather than judicial determination.

I respectfully dissent. *Blair* and *Frank, JJ.*, concur.