THE STATE EX REL. EDGAR C. ELLIS v. DARIUS A. BROWN, Judge of Circuit Court of Jackson County.—33 S. W. (2d) 104.

Court en Banc, October 17, 1930.

*Louis A. Laughlin, Raymond G. Barnett, W. B. Brown* and *Samuel A. Dew* for relator.

*Chet A. Keyes* for respondent.

RAGLAND, C. J.—This is an original proceeding on certiorari. We adopt relator's statement of the case, as follows:

"On and before June 19, 1930, Isadore Katz was a resident of the 4th Ward of the 11th precinct of Kansas City, Missouri. On that date, under the law, the regular intermediate registration of voters was held in said city, preliminary to the ensuing primary election to be held August 5, 1930. Isadore Katz was during all of the day of June 19, 1930, in Chicago, Illinois, more than fifty miles distant from Kansas City. It is admitted that he was a citizen of the United States, was of legal age, and had resided in the State and city the length of time required by law to be registered. On July 22, 1930, he filed with the board of election commissioners of said city, within the time and in the manner required by the registration law, his verified application to be registered as an absentee voter, and filed therewith, as the law requires, proper supporting affidavits of two registered voters of said precinct and ward.

"Section 33 of the Laws of Missouri 1921, page 353, as amended by laws of the Second Extra Session 1921, page 30, requires said board of election commissioners to sit specially to hear said applications for absentees on the Monday, Tuesday and Wednesday of the first week prior to said election, which days in the case in question fell upon July 28, 29 and 30, 1930. Said law also provides that such an applicant shall appear in person before said commissioners on one of said days, so that he may be further examined under oath, and be by said board registered or denied registration. Isadore Katz did not appear before said board on any one of the said days as provided by law, but did appear before said board on Friday, August 1, 1930, and presented his said application. The board entered an order denying his application for the reason that he had failed to appear on one of the three days provided by law for hearing of such applications.

"Said applicant on August 1, 1930, took an appeal to the Circuit Court from the order of the board denying his registration, setting forth all the foregoing facts and attaching the documents and record hereinabove mentioned. Said appeal was filed on August 2, 1930, with the clerk of Division No. 2 of the Circuit Court of Jackson County, Missouri, of which the respondent was and is the judge. Thereupon, relator, Edgar C. Ellis, then a registered voter of said city and candidate for nomination at said ensuing primary election for the office of Representative in Congress from the 5th Congressional District, appeared in person and by attorney and filed a motion to dismiss said application or appeal filed in said division of the Circuit Court for the reason that it appeared on the face of the record that the applicant had failed to appear before the said board on any one of the three days provided by law for the hearing of such applications. This motion was by the respondent overruled and the application was thereupon heard on its merits, its statements found to be true, said application was by respondent sustained, and an order of court made that the said board register said applicant as an absentee voter in said precinct and ward, and that the clerk of said court forthwith notify said board of such action of the court.

"Thereupon, relator, said Edgar C. Ellis, filed in this court his petition for a writ of certiorari, setting forth the contents and attaching true copies of all of said documents and records hereinabove referred to."

It is the contention of the relator that the provisions of the election law in regard to the time in which an applicant for registration as an absentee must appear in person before the board of election commissioners are mandatory, and unless such applicant appears on one of the days appointed by the statute the board is bound to reject

his application; and further, that the board of election commissioners having no power to grant the application of one who so failed to appear, the circuit court whose jurisdiction is appellate, and therefore derivative, is likewise without such power. The questions presented call for constructions of Sections 30 and 33 of the Act Relating to Registration and Elections in Cities Having 100,000 Inhabitants or Over. The Act was passed at the regular session of the Legislature in 1921. [Laws 1921, p. 330.] At the second extra session held that year many of the sections of the original act were amended. [Laws 1921 (2nd Ex. Sess.), p. 19.] As the original numbering was retained in the amendatory act, that will be used in referring to the sections, whether amended or not.

The pertinent portions of Sections 30 and 33 are as follows:

"Sec. 30. If any person who has the qualifications by this article to entitle him to register as a voter in such city shall be absent therefrom at a distance of more than fifty miles, . . . during all of the days appointed for registration prior to any election at which he desires to vote, he may file his application in the office of said election commissioners to have his name registered in the precinct in which he resides. Such application shall be filed as aforesaid not later than the fourteenth day preceding said election and be verified by his affidavit and shall show that he has qualifications required of a voter by this article, and that he was prevented by said absence, . . . from appearing for registration before the precinct board of registry on all of said registration days, specifying such days and stating at what place or places he was during each of said days, . . . (and) the day upon which he returned after his absence during said days, . . . He shall file at the same time the affidavits of two registered voters of said precinct stating that to their knowledge he is a qualified voter, and setting out therein his qualifications, that he resides in said precinct, and that they believe the truth of his statement in his affidavit as to his reasons for not appearing before said registry board on all of said days of registration, specifying them. . . . Said board shall file all affidavits made as aforesaid and carefully preserve the same. Any voter may make objection to any person being registered upon such application in the manner and form as objections are required to be made before the registry board. The election commissioners shall sit specially to hear such applications on the Monday, Tuesday and Wednesday of the first week prior to said election, between the hours of nine A. M. and twelve A. M. and between two P. M. and ten P. M. Said applicants shall appear in person before the commissioners on one of said days; they may be further examined by the commissioners, under oath, and further testimony taken in favor of or against their applications,

All cases shall be heard summarily and decided as soon as heard. If the board shall believe any applicant is entitled to registration according to the provisions of this section he shall be registered as a voter; otherwise his application shall be rejected. If registered, opposite his name on the registry shall be entered the word 'absentee' . . ."

"Sec. 33. . . . In all cases where any person is denied registration or his name been stricken from the register by the board of election commissioners, an appeal shall be allowed to the circuit court. No formal pleading shall be required but it shall be sufficient for such person to present to the court an application verified by affidavit setting out that he has been denied the right to register by said board or that his name has been stricken from the register, as the case may be, and such other information showing his qualifications as a voter in the precinct in which he claims a right to register. The court shall hear said application forthwith. Evidence may be introduced for and against said application. Each case shall be disposed of forthwith and the clerk of said court shall enter upon his records the disposition of said application. In the event the court shall sustain said application, the court shall forthwith notify the board of its action, and the (board) shall cause the applicant's name to be placed on the proper register and note the fact that said name was placed there by order of the court. . . ."

If relator's position is sound, the language, "said applicants shall appear in person before the commissioners on one of said days (Monday, Tuesday and Wednesday of the first week prior to the election)," imposes a limitation on the power of the commissioners to register a voter who was absent on the regular registration days, and consequently if they registered such an absentee who did not appear "on one of said days," but upon some other day, their act in so doing would be a nullity. On the same hypothesis the action of the circuit court in registering an absentee who did not appear in person before the Board of Election Commissioners on one of the appointed days would be void, because, as asserted by relator, its jurisdiction is derivative and therefore circumscribed by the same limitations as those imposed upon the authority of the board.

In support of his position relator cites the general rule that a statute is mandatory when a privilege is conferred upon an individual which must be exercised within a specified time. It is true that the right of suffrage is not a natural or inherent right, if there be any such, but is purely conventional. It is not, however, conferred by the Legislature but by the organic law. As no privilege is granted by the statute in question the rule of construction invoked is without application.

"A mandatory provision is one the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding. Directory provisions are not intended by the Legislature to be disregarded, but where the consequences of not obeying them in every particular are not prescribed the courts must judicially determine them. There is no universal rule by which directory provisions in a statute may, in all circumstances, be distinguished from those which are mandatory. In the determination of this question, as of every other question of statutory construction, the prime object is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject of legislation and the general object intended to be accomplished. Generally speaking, those provisions which do not relate to the essence of the thing to be done and as to which compliance is a matter of convenience rather than substance are directory, while the provisions which relate to the essence of the thing to be done, that is, to matters of substance, are mandatory." [25 R. C. L. sec. 14, pp. 766-7.]

Said Section 30 provides that qualified voters who were absent on the regular registration days may file applications in the office of the election commissioners to have their names registered; that such application shall be filed not later than the fourteenth day preceding said election; that the election commissioners shall sit specially to hear such applications on Monday, Tuesday and Wednesday of the first week prior to the election; and that said applicants shall appear in person before the commissioners on one of said days. The statute does not prescribe the consequences of the failure of an applicant either to file his application not later than the fourteenth day preceding the election or to appear before the election commissioners on Monday, Tuesday or Wednesday of the first week prior to the election; it does not declare that a failure of an applicant in either of the two respects mentioned shall preclude his right to be registered. Now every person having the qualifications prescribed by the Constitution has the right to vote, and the sole objective of the statute is to determine the individuals who possess those qualifications and make a public record thereof. Such record when made tends to prevent repeating, colonization and other fraudulent abuses of the franchise. The making of the record and the truthfulness of its recitals are the essence of the thing the statute requires to be done and not the time in which it is to be done, except that it be within the period between the election and the beginning of the sixth week preceding it. [Secs. 22 and 35.] The board of election commissioners is required to maintain an office and keep it open during business

hours of every day except Sundays and holidays (Sec. 3). It would seem, therefore, that the provisions with reference to the time for the filing of applications by absentees and for their hearing by the board were intended merely to promote the convenient and orderly dispatch of the public business

Relator calls attention to this provision of Section 30: "Any voter may make objection to any person being registered upon such application in the manner and form as objections are required to be made before the registry board." The provisions touching the manner and form of making such objections before the registry board are found in Section 24. They are as follows: "Any voter of the precinct shall be admitted to the place of registration in said precinct for the purpose of challenging any applicant who applies to be registered, but he shall be examined, under oath, touching the cause for such challenge and shall leave the place of registration when said challenge shall have been disposed of . . . If, during either day of registration, a registered voter of the ward shall come before the board of registry and make oath that he believes that any particular person upon said registry is not a qualified voter, such facts shall be noted, etc." It is the contention that, these provisions considered, the language of Section 30 that "said applicants shall appear . . . on one of said days" must be construed as mandatory; otherwise, voters who desired to challenge the rights of such applicants, or any of them, to be registered, having no notice as to the time when their applications would be heard, would be deprived of an opportunity for making such challenges. The contention would have substance if the provisions of Sections 24 and 30 were alone to be considered. They must, however, be construed in connection with those of Section 33 relating to appeals. According to the latter an appeal lies in all cases where a person is denied registration or his name has been stricken from the register by the board of election commissioners. There is no limitation as to the time within which an appeal may be taken; no notice of any kind, to the Board of Election Commissioners or any one else, is required; there is no provision requiring the elapse of any time between the filing of the appeal and the hearing thereon in the circuit court; no allowance of the appeal by the Board of Election Commissioners is necessary; nor is there any requirement that its certificate of rejection or a certified copy of its record touching the denial of registration be filed in the circuit court. On the contrary, a person who has been denied registration may present to the circuit court, at any time, without notice to any one, and without the knowledge of the Board of Election Commissioners, "an application verified by affidavit setting out that he has been denied the right to register by said board . . . and such

other information showing his qualifications as a voter in the precinct in which he claims the right to register," and thereupon "the court shall hear said application forthwith." In other words an applicant who has been denied registration by the Board of Election Commissioners may with witnesses of his own selection, at a time of his own choosing, go before the circuit court and demand, and have, an immediate hearing. That the matter can be so staged as to insure him an *ex parte* hearing cannot be doubted. It cannot be, therefore, that the Legislature intended to limit the power of the Board of Election Commissioners to hear the applications of absentees only on designated days, in order that the applicants might be confronted with challengers, when it placed no such limitations upon the circuit court. If in the proceeding under review the applicant, Katz, had appeared before the Board of Election Commissioners "on one of said days" appointed by the statute and his right to be registered had been challenged on the ground that he had not resided within the State a year, and had the board after hearing the evidence *pro* and *con* sustained the challenge and denied him registration, he could notwithstanding have gone before the circuit court at such time as he deemed most propitious for his purpose and there on an *ex parte* hearing proffered only such evidence as would tend to support his application, and the court in disposing of the matter would necessarily have had to base its decision on such evidence and on that alone. The fact that relator was present on the occasion when Katz presented his "appeal" to the circuit court and moved to dismiss it indicates merely that this is a made case, brought for the purpose of securing this court's construction of the statutory provisions which have been considered; otherwise, relator would have had no knowledge of Katz's intention to appear in the circuit court, much less of the day on which he would appear. The construction contended for would in no way aid in preventing fraudulent registration. It is of no use to tighten the bung while the spigot remains open.

For the reasons heretofore indicated we are of the opinion that the provision of said Section 30 that persons applying to be registered who were absent on the regular registration days shall appear before the board of election commissioners on one of the days therein designated is directory and not mandatory, and consequently that the action of the circuit court in registering on appeal an applicant who did not appear before the board on one of the specified days was well within the power with which that court is invested by the statute. It follows that our writ should be quashed. It is so ordered. *Gantt, Walker* and *White, JJ.,* concur; *Blair, Frank* and *Atwood, JJ.,* dissent, *Atwood, J.,* in a separate opinion in which *Blair* and *Frank, JJ.,* concur.

ATWOOD, J. (dissenting). I am not in accord with the majority opinion holding that the statutory provisions here in question are directory.

It is a well established rule of construction that where a statute confers a privilege compliance with all the conditions prescribed for its acquisition is mandatory. [36 Cyc. 1160; 26 Am. & Eng. Ency. Law 691; Endlich on Inter. of Statutes, sec. 434.] The majority opinion recognizes this rule, but holds it inapplicable on the ground that "no privilege is granted by the statute in question." This analysis is unsound. The statute in question (Sec. 30, Laws 1921, 2nd Ex. Sess., p. 30) does confer a privilege, indeed, the very one that the would-be registrant in this case is now seeking, to-wit, the privilege, accorded invalids and absentees qualified to register in certain circumstances and upon specified conditions, to be registered on certain days other than the days appointed for general registration. It follows that the conditions of the statute conferring the privilege are mandatory and must be complied with in order to acquire the privilege of such registration.

Denying the application of this rule, the majority opinion proceeds to interpret the provisions of this statute that persons desiring to exercise this privilege should file their applications within a certain time and appear in person before the election commissioners on one of the three days named in the statutes, to-wit, "on the Monday, Tuesday and Wednesday of the first week prior to said election, between the hours of nine A. M. and twelve A. M. and between two P. M. and ten P. M.," in order that they "may be further examined by the commissioners, under oath, and further testimony taken in favor of or against their applications," as "intended merely to promote the convenient and orderly dispatch of the public business." If that was the purpose it might well have been committed without direction to the wisdom of the Board of Election Commissioners, which body, as stated in the majority opinion "is required to maintain an office and keep it open during business hours of every day except Sundays and holidays." It seems obvious that these provisions were intended to serve a far more serious and important purpose; to-wit, that of securing honest registration in aid of honest elections. The efficacy to that end of a public record of qualified voters officially prepared under proper supervision reasonably in advance of election dates is apparent, and in fact conceded. The majority opinion reads: "Such record when made tends to prevent repeating, colonization and other fraudulent abuses of the franchise." It goes to the essence of the thing primarily sought, to-wit, honest registration, and the legislative details directly contributing thereto are necessarily mandatory. It is of no consequence that the act itself does not expressly say that they are mandatory, or state what the result will be

if they are not complied with, if the effect of non-compliance obviously goes, as it does in this instance, to the essence of the thing sought to be effectuated.

The majority opinion cites Section 33 of the act governing appeals and holds that its failure to provide notice, time within which appeals shall be taken and like matters, indicates that the provisions of Section 30 here under consideration should be construed as directory. The fact that the appeal section is not as effectively drawn as it might be may well be a matter of future legislative concern, but it should not move us to ignore the obvious purpose of the act as a whole or refuse to declare the provisions of Section 30 mandatory.

For the reasons stated I respectfully dissent. *Blair* and *Frank*, *JJ.*, concur.