GÉORGE W. DRAPER III, Judge.
I respectfully dissent from the principal opinion in that I believe the trial court properly entered judgment in favor of Tar-yn .Williams (hereinafter, ‘Williams”), ordering her name not be included on the central registry of child abuse and neglect perpetrators because the Children’s Division of the Missouri Department of Social Services (hereinafter, “the Children’s Division”) failed to comply with the applicable time limitations set forth in sections 210.145 and 210.152, RSMo Supp.2005. The Children’s Division failed to comply with the statutory time limits, which I believe divested it of authority to continue to take action. For the reasons set forth below and in my dissent in Frye v. Department of Social Services, 440 S.W.3d 405, 2014 WL 3107299 (SC93471) (Mo. banc July 8, 20Í4), I would affirm the judgment of the trial court.
The Children’s Division is a statutory creation, and its authority is limited to that granted to it by the legislature. State ex rel. Missouri Pub. Defender Comm’n v. Waters, 370 S.W.3d 592, 598 (Mo. banc 2012); see also In re C W., .211 S.W.3d 93, *430 97 (Mo. banc 2007). Accordingly, it is constrained by its articulated statutory authority. Hessel v. Missouri Dept. of Social Services, Children’s Div., 400 S.W.3d 813, 816 (Mo.App. E.D.2013) (citing State ex rel. MoGas Pipeline, LLC v. Missouri Pub. Serv. Comm’n, 366 S.W.3d 493, 496 (Mo. banc 2012)). Looking at the entirety of our statutory scheme, I believe the legislature intended only to provide the Children’s Division ninety days in which' to take action against an alleged perpetrator. Since the Children’s Division failed to act within that statutorily articulated time-frame, it had no authority to place Williams’ name on the central registry.
Section 210.145.14 provides that after receiving a report of abuse or neglect, the Children’s Division “shall complete all investigations within thirty days, unless good cause for the failure to complete the investigation is documented in the information system. If the investigation is not completed within thirty days, the information system shall be updated at regular intervals and upon the completion of the investigation.” Section 210.152.2 provides that “[w]ithin ninety days after receipt of a report of abuse or neglect that is investigated, .the alleged perpetrator ..., shall be notified in writing of any determination made by the [Children’s] Division based on the investigation.” This section then delineates that “the notice shall advise either:
(1) That the [Children’s] Division has determined ... that abuse or neglect exists and that the division shall retain all identifying information regarding the abuse or neglect; that such information shall remain confidential and will not be released except to law enforcement agencies, prosecuting or circuit attorneys, or as provided by section 210.150; that the alleged perpetrator has sixty days from the date of the receipt of the notice to seek reversal of the [Children’s Division’s determination through a review by the child abuse and neglect review board as provided in subsection 3 of this section; or
(2) That the [Children’s Division has not made a probable cause finding or determined by a preponderance of the evidence that abuse or neglect exists.”
Section 210.152.2 (emphasis added). The legislature did not bestow a provision for an extension of time for further investigation in this section as it did in section 210.145.14.
The legislature also compels the Children’s Division to notify the alleged perpetrator with the written description of the investigation process once it opens an investigation. Section 210.183.1. Section 210.183.1 contains language drafted by the legislature explaining the process of the investigation to the alleged perpetrator by putting sections 210.145 and 210.152 into plain words for the public. The Children’s Division’s notification letter must be drafted in substantially the same form as set forth in section 210.183.1. This section states that the Children’s Division “shall make every reasonable attempt to complete the investigation within thirty days.” If the investigation is not completed within thirty days, “within ninety days you will receive a letter from the [Children’s] Division which will inform you of one of the following:
(1) That the [Children’s] Division has found insufficient evidence of abuse or neglect; or
(2) That there appears to be by a preponderance of the evidence reason to suspect the existence of child abuse or neglect in the judgment of the [Children’s] Division and that the [Children’s] Division will contact the family to offer social services.”
Section 2Í0.183.1 (emphasis added). This notification language tracks the statutory language, delineating the Children’s Divi *431 sion’s authority, in sections 210,145.14 and 210.152.
Justice Sedgwick concisely sets forth the general rules of interpreting statutes and determining when a statute should be treated as directory:
The intention of the Legislature should control absolutely the action of the judiciary; where that intention is clearly ascertained, the courts have no other duty to perform than to execute the legislative will, without any regard to their own views as to the wisdom or justice of the particular enactment.
The means of ascertaining that intention are to be found in the statute itself, taken as a whole With all its parts, — in statutes on the same subject, antecedent jurisprudence and legislation, contemporaneous and more recent exposition, judicial construction and usage; and to the use of these means, and these alone, the judiciary is confined. No other extrinsic facts are in any way to be taken into consideration.
It is not until these means fail, and until the attempt to ascertain the legislative intent is hopeless, that the judiciary can with propriety assume any power of construing a statute, strictly or liberally, with reference either to the particular character of the statute, or to their own ideas of policy or equity. Where the meaning of the statute, as it stands, is clear, they have no power to insert qualifications, engraft exceptions, or make modifications, under the idea of providing for cases in regard to which the Legislature has omitted any specific provisions.
Theodore Sedgwick, A Treatise on the Rules which Govern the Interpretation and Construction of Statutory and Constitutional ■ Law, at 325-26 (2d ed. 1874) (hereinafter, “Sedgwick ”)[1]
Section 210.152.2 provides that “[wjithin ninety days after receipt of a report of abuse or neglect that is investigated, the alleged perpetrator ..., shall be notified in writing of any determination made by the division based on the investigation.” This section then delineates “the notice shall advise either:
(1) That the [Children’s Division has determined ... that abuse or neglect exists and that the division shall retain all identifying information regarding the abuse or neglect; that such information shall remain confidential and will not be released except to law enforcement agencies, prosecuting or circuit attorneys, or as provided by section 210.150; that the alleged perpetrator has sixty days .from the date of the receipt of the notice to seek reversal of the [Children’s Division’s determination through a review by the child abuse and neglect review board as provided in subsection 3 of this section; or
(2) That the [Children’s Division has not made a probable cause finding or determined by á preponderance of the evidence that abuse or neglect exists.”
Section 210.152.2 (emphasis added).
The legislature did not bestow a provision for an extension of time for further investigation in this section as it did in section 210.145.14. The legislature also mandated that the Children’s Division must inform the alleged perpetrator within ninety days of one of two possible outcomes.
*432 In this case, the initial hotline call reporting Williams’ conduct occurred on October 13, 2010. The Children’s Division informed Williams, outside of the initial thirty days contemplated by section 210.145.14, that its investigation would be delayed for “good cause” in that it was involved in a “co-investigation” with police. The Children’s Division was unable to make a decision and inform Williams until more than one hundred days later, well beyond the statutory period contemplated by section 210.152.2. Yet, the Children’s Division admitted it made its final determination based upon the information it gathered during the first thirty days of its investigation.. The Children’s Division failed to comply with the statutory time periods in either section 210.145.14 or section 210.152.2, but it claims that it is entitled to do so to protect Missouri’s children.
The principal opinion’s reliance on its analysis in Frye curtails the actual analysis that should be performed' by this Court when attempting to determine whether a statute is mandatory or directory by only noting the lack of a penalty provision within section 210.152.2. “Directory provisions are not intended by the legislature to be disregarded, but where the consequences of not obeying them in every particular are not prescribed the courts must judicially determine them.” State ex rel. Ellis v. Brown, 326 Mo. 627, 33 S.W.2d 104, 107 (1930) (quoting 25 R.C.L. Sec. 14 pp. 766, 767).[2] Our “courts recognize that the term [‘shall’] is frequently used carelessly and indiscriminately, and they have not hesitated to hold that the intent of the legislative enactment will prevail over the literal sense of its terms.” Howard v. Banks, 544 S.W.2d 601, 604 (Mo.App. St. Louis Dist. 1976). “There is no absolute or universal rule by which statutory provisions may be distinguished and classified as mandatory or directory.” State ex rel. Hopkins v. Stemmons, 302 S.W.2d 51, 53 (Mo.App.Spring.Dist.1957). “In the determination of this question, as of every other question of statutory construction, the prime object is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject of legislation and the general object intended to be accomplished.” Brown, 33 S.W.2d at 107 (quoting 25 R.C.L. Sec. 14 pp. 766, 767); see also Hopkins, 302 S.W.2d at 53; State ex rel. Rogersville Reorganized School Dist. No. R-4, of Webster Cnty. v. Holmes, 363 Mo. 760, 253 S.W.2d 402, 404 (1952) (“In determining whether either of the provisions of the schedule with which each relator failed to comply is mandatory or directory, the prime object is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject legislation and the general object intended to be accomplished.”) (internal quotation omitted).
“As with all matters of statutory interpretation, determining if the word ‘shall’ is mandatory or directory requires courts to review the context of the statute and to ascertain legislative intent.” State v. Teer, 275 S.W.3d 258, 261 (Mo. banc 2009). When engaging in statutory construction, the primary purpose is to ascertain the legislature’s intent from the language used and to give effect to that intent if possible. Beard v. Missouri State Employees’ Retirement System, 379 S.W.3d 167,169 (Mo. banc 2012). This Court presumes the legislature intended every word, clause, sentence, and provision of a statute to have effect and did not insert superfluous language into the statute. City of Shelbina v. Shelby County, 245 S.W.3d 249, 252 (Mo. *433 App.E.D.2008). “The construction of statutes is not to be hyper-technical, but instead is to be reasonable and logical and [to] give meaning to the statutes.” Lewis v. Gibbons, 80 S.W.Bd 461, 465 (Mo. banc 2002) (internal quotations omitted).
“Provisions of an entire legislative act must be construed together and, if reasonably possible, all provisions must be harmonized.” Chester Bross Const. Co. v. Missouri Dept. of Labor and Indus. Relations, Div. of Labor Standards, 111 S.W.3d 425, 427 (Mo.App.E.D.2003) (quoting.St. Louis County v. B.A.P., Inc., 25 S.W.3d 629, 631 (Mo.App.E.D.2000)). Statutory provisions relating to the same subject matter “must be considered in context and sections of the statutes .in pari materia, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words.” Harpagon MO, LLC v. Bosch, 370 S.W.3d 579, 584 (Mo. banc 2012) (quoting South Metro. Fire Prot. Dist. v. City of Lee’s Summit, 278 S.W.3d 659, 666 (Mo. banc 2009)); see also Sedgwick at 209 (“It is well settled, that in construing a doubtful statute, and for the purpose of arriving at the legislative intent, all acts on the same subject-matter are to be taken together and examined, in order to arrive at the true result.”) This allows the legislation to be read consistently and harmoniously. Crawford v. Div. of Employment Sec., 376 S.W.3d 658, 664 (Mo. banc 2012). “The rule that statutes in pari materia are to be consulted for the construction of each other, holds good, though some of the statutes may have expired, or even been repealed, and whether they are referred to or not.” Sedgwick at 212. Statutes are enforced as they are written, not as they might have been written. Turner v. School Dist. of Clayton, 318 S.W.3d 660, 667 (Mo. banc 2010). Further, this Court presumes the legislature is aware of the existing law. Id.
Our legislature created the statewide child abuse and neglect registry to “promote the safety of children ... by conducting investigations ... and providing services in response to reports of child abuse or neglect.” Section 210.109.2; Jamison v. State, Dept. of Social Services, Div. of Family Services, 218 S.W.3d 399, 402-03 (Mo. banc 2007). The central registry is a non-public list of people who committed child abuse or neglect. Sections 210.110(3) and 210.150.2. The central registry provides “a means to protect both victims of child abuse and other children with whom a perpetrator of abuse or neglect might come into contact by ensuring that information about cases of abuse is available to individuals and entities responsible for caring and protecting children.” Pope v. Child Abuse and Neglect Review Bd., 309 S.W.3d 362, 366 (Mo.App.E.D.2010). There is limited access to the central registry. Hessel, 400 S.W.3d at 817 n. 2; see section 210.150.
When a hotline call is received, the Children’s Division is charged with opening a thirty-day investigation. Section 210.145.14. The legislature clearly recognized that some investigations may have “good cause” to be extended beyond the initial thirty-day investigation period because the legislature included the qualifying language of “good cause.” Id. The legislature promulgated a procedure, requiring the Children’s Division to update the database with its progress on the investigation after the initial thirty-day period. Id. The legislature also required that the alleged perpetrator be given written notice of the investigative procedure, which states that the investigation should be completed within thirty days, but may be extended to ninety days. There is no additional provision for a lengthier investigation. Section 210.183.1. After the initial investigatory period, the legislature directs that the Children’s Division within ninety *434 days shall provide notice to the alleged perpetrator that either the Children’s Division finds by a preponderance of the evidence that abuse or neglect exists or that the Children’s Division has not determined by a preponderance of the evidence that abuse or neglect exists. Section 210.152.2.
Section 210.152.2 does not state what consequence will ensue if the Children’s Division fails to provide the alleged perpetrator a written determination of its investigation within ninety days. The principal opinion believes that, because there is no delineated consequence from failing to inform an alleged perpetrator of its decision within ninety days, section 210.150.2 should be construed as only a directory statute and the Children’s Division does not need to comply with the statutory deadline.[3] See and Cf. Farmers & Merchants Bank & Trust Co. v. Dir. of Revenue, State of Mo., 896 S.W.2d 30, 33 (Mo. banc 1995) (construing only one statute and not requiring reference to any other provision within the same act).
If section 210.152.2 were to be read in isolation, the “shall” without more could be construed as directory because there is no delineated consequence for failing to meet the ninety-day deadline. However, by reading section 210.152 in pari materia with sections 210.145 and 210.183, looking at the entire legislative act, and harmonizing its provisions, it is clear the legislature intended the language to be mandatory. See Chester Bross, 111 S.W.3d at 427; Garzee v. Sauro, 639 S.W.2d 830, 832 (Mo.1982) (finding a genuine issue of fact remained when reconciling two statutes regarding giving notice for a real estate sale, and stating, “giving the statute a directory meaning would imply that the publication of notice of foreclosure in section 141.430 satisfies the notice requirements for in rem proceedings under the due process clause of the Missouri and United States constitutions.... [W]e cannot interpret section 141.440 as directory only.”)
The Children’s Division argues this Court should infer it has the authority to extend the ninety-day limit set forth in section 210.152 for written notification of an investigation’s outcome, if “good cause” exists.[4] The Children’s Division asserts that there is “good cause” to continue its investigation because it seeks to protect Missouri’s children. While this seems a laudable goal, the Children’s Division is a statutory creature and is vested only with the express authority bestowed to it by our legislature, which protects all of our citizenry.
Yet, the principal opinion states that to enforce the written statutory timeframe would serve no one because the Children’s Division would stop its investigation as soon as allegations are substantiated. The principal opinion’s willingness to allow an administrative agency to continue any investigation in perpetuity will only be a disservice to those it is charged to protect. At no time prior to the Children’s Division substantiating an allegation of abuse are children protected. Until an investigation is completed and a perpetrator is listed on the central registry, that perpetrator is at liberty to have continued free access to children. Missouri’s children are not protected from those who seek to harm them by a lengthy investigation process. Had *435 the legislature wished to allow the Children’s Division to have an unlimited amount of time to keep investigations on alleged perpetrators open, as argued by the principal opinion, it could have placed the same “good cause” language in section 210.152.2.[5]
Similarly, section 210.183.1 states that the Children’s Division will make every reasonable effort to complete the investigation within thirty days, but that “[w]ith-in ninety days you will receive a letter from the [Children’s] Division which will inform you of’ its decision. (Emphasis added). This statutory language supports interpreting “shall” in section 210.152 as the legislature’s intent to create a mandatory directive and not allow the Children’s Division to rest on its laurels rather than pursuing every investigation to a rapid conclusion to protect Missouri’s children.[6]
Finally, this Court notes that the legislature modified section 210.145.14, RSMo Supp.2007, and section 210.152, RSMo Supp.2011. Statutory amendments can further elucidate the legislature’s intent. City of Columbia v. Henderson, 399 S.W.3d 493, 497 (Mo.App.W.D.2013); Anderson ex rel. Anderson v. Ken Kauffman & Sons Excavating, LLC, 248 S.W.3d 101, 109 (Mo.App.W.D.2008). “When the legislature amends a statute, it is presumed to have intended the amendment to have some effect.” Wollard v. City of Kansas City, 831 S.W.2d 200, 203 (Mo. banc 1992).
Section 210.145.14, RSMo Supp.2007, was amended to provide that in addition to extending an investigation for more than thirty days for “good cause” that “[i]f a child involved in a pending investigation dies, the investigation shall remain open until the [Children’s Division’s investigation surrounding the death is completed.”
The legislature made it clear that the death of a child permits the Children’s Division’s investigation to continue indefinitely until its conclusion. Were the term “shall” to be merely directory, there would have been no need to legislate that an investigation could extend indefinitely in only one circumstance. This amendment to the statute is further evidence that the legislature intended to treat the death of a child differently from all other cases of alleged abuse and neglect by extending the investigatory time indefinitely. The plain language of the statute in this case demonstrates that the legislature intended to limit the time for which the Children’s Division could conduct an investigation for abuse or neglect.
Our legislature added subsection 3 to section 210.152 in 2011, allowing the Children’s Division to reopen a case
for review at the request of the alleged perpetrator, the alleged victim, or the office of the child advocate if new, specific, and credible evidence is obtained that the [Children’s Division’s decision was based on fraud or misrepresentation of material facts relevant to the [Chil *436 dren’s Division’s decision and there is credible evidence that absent such fraud or misrepresentation the [Children’s Division’s decision would have been different.
This further clarifies the legislature’s intent to only provide the Children’s Division a maximum of ninety days to complete its investigation and notify the alleged perpetrator of its decision. The amendment now demonstrates that the investigation may be reopened to further protect children should there be new, specific, credible evidence that the Children’s Division’s decision was based on fraud or a misrepresentation of evidence.
The Children’s Division’s argument, seeking to extend its investigation and decision making indefinitely, adds “good cause” language to section 210.152 that does not exist. This Court will not interpret a statute as a party wishes it were written. Turner, 818 S.W.Sd at 667. This Court will not add statutory language where it does not exist; this Court merely interprets the statutory language as written by the legislature. Ryder Student Transp. Services, Inc. v. Dir. of Revenue, State of Mo., 896 S.W.2d 633, 635 (Mo. banc 1995). It is obvious the legislature knew how to grant the Children’s Division an extension of the statutory time limitations because it did so in section 210.145 by inserting the “good cause” language and a procedure to follow when the investigation was not completed. The legislature reiterated its intent that no investigation should extend beyond ninety days by promulgating the notice to the alleged perpetrator, providing he or she will be notified of the Children’s Division’s decision within ninety days. Section 210.183. Finally, the legislature’s subsequent statutory amendments to sections 210.145.14, RSMo Supp.2007, and 210.152.3, RSMo Supp.2011, further indicate the legislature’s intent to limit the time of the Children’s Division investigations in the normal course of its business. The legislature fully articulated á statutory scheme to investigate and protect all Missouri’s children in a prompt and efficient manner. See Jamison, 218 S.W.3d at 410.
Conclusion
Accordingly, I believe the Children’s Division’s failure to operate within the enunciated statutory time frames divested it of the authority to take any other action in this case.[7] I would affirm the trial court’s judgment.

. The principles expounded upon in Sedg-wick’s treatise, while applicable, are difficult for citizens to locate; the Missouri’s Supreme Court library does not maintain a copy of any of his treatises for citizens. However, this Court still recognizes his writing as influential in our decision-making. See State v. Honeycutt, 421 S.W.3d. 410, 419-20 (Mo. banc 2013).

. The principal opinion neglects to look at the other statutory provisions within the same act, covering the same procedures and authority granted to the Children’s Division, thereby failing to give any meaning to every statutory provision enacted by our legislature.

. This Court has found reversible error by the circuit court in a termination of parental rights hearing when it failed to comply strictly with section 211.455.3, a section that includes the word "shall” but does not include a penalty provision. In re C.W., 211 S.W.3d at 98 (abrogated on other grounds by In re B.H., 348 S.W.3d 770 (Mo. banc 2011)). See also In re A.H., 169 S.W.3d 152, 158 (Mo.App. S.D.2005) (same).

. The Children's Division raises its "good cause” argument for the first time to this Court. Rule 83.08(b).

. An alleged perpetrator has no due process rights during the course of the Children’s Division's limited investigation. Jamison, 218 S.W.3d at 410. Providing the Children's Division with an unlimited amount of time to open files on and investigate alleged perpetrators is tantamount to authorizing an unlimited investigation with rio protection for Missouri children.

. The central registry is designed not only to protect children within families but also to protect children who are entrusted to others for care in a daycare or school setting. A lengthy delay in adding a perpetrator’s name to the central registry only allows that perpetrator more access to children, thereby further endangering all children.

. The principal opinion characterizes the outcome of this dissenting opinion as creating a sanction. Yet, this legally sound and historically approved approach does no such thing. Merely, the Children’s Division is required to follow the legislative mandates, and its failure to do so divests it from further action; this is the result of the Children’s Division’s failure to comply with the statutes, not a court-created sanction. To protect Missouri’s children, the legislature has required diligence and only authorized the Children’s Division to act during a statutorily created time period; its authority to act is limited to that granted to it by the legislature. State ex rel. Missouri Pub. Defender Comm’n, 370 S.W.3d at 598; In re C.W., 211 S.W.3d at 97.