Raymond HOWARD, Petitioner,
Plaintiff-Appellant,

v.

J. B. BANKS and St. Louis Board of
Election Commissioners, et al.,
Defendants-Respondents.

No. 38507.

Missouri Court of Appeals,
St. Louis District,
Division One.

Nov. 23, 1976.

**602**

Howard, Singer & Meehan, Raymond Howard, Jr., St. Louis, for plaintiff-appellant.

Daniel R. Sokol, Clayton, Timothy G. Noble, St. Louis, for defendants-respondents.

WEIER, Presiding Judge.

On August 20, 1976, the Board of Election Commissioners of the City of St. Louis certified that J. B. Banks was the winner by 617 votes over Raymond Howard in the August 3rd primary election for the office of State Senator of the Fifth Senatorial District. The count so certified was 7,407 votes for Banks and 6,790 votes for Howard. These totals included 6,488 regular votes for Banks, 6,403 regular votes for Howard, 919 absentee votes for Banks, and 387 absentee votes for Howard. Howard contested the election alleging fraud, misconduct and irregularity with respect to absentee balloting to such an extent that more than 617 absentee ballots were invalid, thus placing the results of the election in doubt. Howard requested a preliminary hearing to determine if he was entitled to a recount under the provisions of §§ 124.010 and 124.020, RSMo 1969. During the conduct of this hearing, the parties stipulated that if the evidence was material to any of the issues in the case, the machine balloting results were in error by 100 votes so that Banks actually received only 6,388 machine votes and Howard actually lost by only 517 votes. Because the petition claimed no irregularity with respect to the regular votes voted on the machines, the trial judge properly refused to allow the introduction of this evidence; but at a later time he did allow contestant to amend his petition so as to include this block of votes in the contest. We will therefore consider the margin of victory on this appeal at 517 votes.

On September 10, 1976, the court sustained the defendant's motions to dismiss and found against the contestant on the evidence adduced. The court determined that Howard had failed to make a prima facie case of the invalidity of a sufficient number of ballots equal to or greater than the margin of defeat. This appeal was expedited pursuant to § 124.050, RSMo 1969.

■ Contestant Howard, on appeal, contends that the trial court erred in sustaining the respondent's motions to dismiss because the voters and notaries who voted and officiated at the voting of the absentee ballots failed to follow mandatory provisions of the statutes. Hence, sufficient ballots were placed in doubt to require the ruling that a recount be held. The key to a decision on this issue is whether the contestant has made a prima facie showing that the election results were "in doubt" as provided in § 124.020, *supra*. As stated therein, "where the issue is drawn over the validity of certain ballots cast, a prima facie case is made if the validity of a number of ballots equal to or greater than the margin of defeat is placed in doubt." Contestant need not show that he actually won the election, but the doubt shown must be sufficient to justify a recount. *State ex rel.*

*Bonzon v. Weinstein,* 514 S.W.2d 357, 363[10] (Mo.App.1974).

Section 112.050, RSMo 1969, sets out the requirements with regard to how the ballot should be marked and returned in part as follows:

"1. The absentee voter shall make and subscribe to the affidavits provided for on the return envelope before any officer authorized by law to administer oaths. The voter shall exhibit the ballot to the officer unmarked, and shall in the presence of the officer and of no other person mark the ballot in such manner that the officer cannot see or know how it is marked. The ballot shall then in the presence of the officer be deposited in the envelope and the envelope securely sealed. If the voter is blind or physically incapable of marking the ballot, he may be assisted by a person of his own choosing in marking and depositing the ballot. The officer shall then write or print upon the envelope the following: 'Absentee ballot of (insert name of voter) marked and sealed in my presence', which certificate shall be signed by the officer and his official title noted thereon. The envelope shall be sent by mail by the voter, postage prepaid, to the election authority, or may be delivered in person by the voter, or his assistant if the voter is blind or physically incapable of marking the ballot, to the issuing official, who shall give his receipt therefor. * * *."

It has long been the philosophy of the law in this state that where the law itself declares a specified election irregularity to be fatal, the courts will follow that command, irrespective of their views of the importance of the requirement. Where such declaration is absent, the courts attempt to determine whether the deviation from the requirements of the law has or has not so vital an influence on the proceedings as would probably prevent a free and full expression of the will of the people. "It has

been sometimes said, in this connection, that certain provisions of election laws are mandatory, and others directory. These terms may, perhaps, be convenient to distinguish one class of irregularities from the other. But, strictly speaking, all provisions of such laws are mandatory, in the sense that they impose the duty of obedience on those who come within their purview. But it does not, therefore, follow that every slight departure therefrom should taint the whole proceedings with a fatal blemish. Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest return, as paramount in importance to the minor requirements which prescribe the formal steps to reach that end; and, in order not to defeat the main design, are frequently led to ignore such innocent irregularities of election officers as are free of fraud, and have not interfered with a full and fair expression of the voters' choice." *Bowers v. Smith,* 111 Mo. 45, 20 S.W. 101, 105 (banc 1892). It has been stated that this conclusion in election cases is best based upon the proposition that when the voter has performed his own duty in accordance with the law he is justified in doing nothing more and his rights should not be defeated through the remissness and dereliction of the election officers. *Straughan v. Meyers,* 268 Mo. 580, 187 S.W. 1159, 1163 (banc 1916). See also, *Kasten v. Guth,* 395 S.W.2d 433, 435[2, 3] (Mo.1965). Thus, in *State ex rel. School District of City of Jefferson v. Holman,* 349 S.W.2d 945, 949[6, 7] (Mo. banc 1961), the failure of an official to supply absentee ballots 30 days before the election as required by statute did not void the election since the requirement was directory only. Again, failure to follow the statute requiring a notary to include the date his commission expires on a certification did not make the certification and ballot invalid. *New v. Corrough,* 370 S.W.2d 323, 326[3–5] (Mo.1963).

Contestant urges that the use of the word "shall" in §§ 112.040 and 112.050, RSMo 1969, makes the requirements found therein mandatory irrespective of whether it applies to the voter or to the officer. The

use of the word "shall" indicates a mandate and will usually be interpreted to command the doing of whatever is required. But the courts recognize that the term is frequently used carelessly and indiscriminately, and they have not hesitated to hold that the intent of the legislative enactment will prevail over the literal sense of its terms. Thus, public policy frequently impels interpretation of statutory language as directory so that acts of commission or failures to act by omission of public officials may not prejudice the rights of citizens having no direct and immediate control over such officials. *State ex rel. Hopkins v. Stemmons,* 302 S.W.2d 51, 54[4, 5] (Mo.App.1957); *Elliott v. Hogan,* 315 S.W.2d 840, 846[2] (Mo.App. 1958).

■ A review of the evidence is necessary to determine whether, under the light of the authorities herein discussed, contestant has placed sufficient number of votes in doubt to have made a prima facie case requiring a recount. We first examine the testimony of Ercycle B. Strother Robinson, a notary who contestant claims did not fully perform the official functions required under §§ 112.040 and 112.050, *supra,* in the casting of 346 absentee ballots. There was a conflict in her testimony with regard to two matters: 1) She testified that none of the voters exhibited their unmarked ballots to her prior to voting. However, on cross-examination she said that the ballots were exhibited to her unmarked before they were voted. 2) She testified on direct examination that others were present when many ballots were marked. On cross-examination, however, she said that the others were present in the house but not in the room where the voting occurred. In each instance there was substantial evidence from which the trial court could find that the requirements of the statute were complied with. We defer to the trial court's determination and finding under this conflicting evidence. Rule 73.01.3(b). The third charge of irregularity in the voting of the ballots handled by Ms. Robinson concerns her failure to write in the name of the voter on the envelope as set out in § 112.-050, *supra,* as follows: "The officer shall then write or print upon the envelope the following: 'Absentee ballot of (insert name of voter) marked and sealed in my presence', which certificate shall be signed by the officer and his official title noted thereon." This occurred on some 260 of the ballots. It is unfortunate that Ms. Robinson did not follow the terms of the statute and complete this certification, but we do not believe that failure to do so invalidates these votes for the reason that the affidavit set out on the envelope as required under § 112.040 contains all of the information with regard to the name of the voter. In addition, there is no dispute that Ms. Robinson signed her name on each envelope below the following printed statement:

"I hereby certify that the affiant has exhibited the enclosed ballot to me unmarked, and that such ballot was marked by the voter or an assistant if indicated above, and I enclosed and sealed same in this envelope, without my seeing or knowing his vote * * *."

The certification required by § 112.050, *supra,* is a duty obligatory on the notary. But here it, in effect, requires information which has already been given. We therefore determine that under the circumstances of this case it is directory.

■ We next pass to the question of the validity of 47 absentee ballots notarized by witness Corine Chatman. Contestant charges Ms. Chatman read the oath prior to the voter marking his ballot. He asserts that the oath must be administered after the voter has marked his ballot and sealed it in the envelope. Ms. Chatman's testimony indicates that the pattern she followed in all 47 cases was to first read the oath to the voters and apparently the other matter on the outside of the envelope as prescribed in § 112.040. She stated she did this "to let them know what it was all about", but she further testified that the voter did not sign the affidavit before he voted. Rather, he signed it after he voted and after she had filled it out. Section 112.050 does not prescribe the sequence in which these matters should take place. In fact, the first sentence of the section states that the voter

should make and subscribe to an affidavit on the return envelope. The next sentence requires that the voter exhibit the ballot to the officer unmarked, and then in the presence of the officer mark the ballot. In the absence of more specific directions in the statute, we cannot fault the notary for following this sequential pattern in the taking of the affidavits. The final act of executing the affidavit was done by the voter when he affixed his signature to the affidavit after the ballot had been voted and sealed inside the envelope. It was also charged that in some instances a person or persons other than the notary, Ms. Chatman, were present when the voter marked his ballot. In the one instance cited in the record to this court, it was not brought out in the testimony as to what this person was doing, or why he was there. Section 112.-050, *supra,* specifically makes provision that if the voter is blind or physically incapable of marking the ballot he may be assisted by a person of his own choosing in marking and depositing the ballot. In the absence of further development in the evidence, we are unable to determine whether this ballot was improperly marked.

Because the court below is sustained in its determination that the result of the election was not placed in doubt by a review of the testimony of notaries Robinson and Chatman as to a total of 393 votes, we disregard the testimony as to the remaining absentee ballots and have affirmed the judgment of the lower court.

DOWD and STEWART, JJ., concur.