The CITY OF SHELBINA Missouri, Appellant,

v.

SHELBY COUNTY, Missouri, County R–IV, Monroe City R–1, Salt River Ambulance District, Monroe City Ambulance District, Shelby County Collector and Shelby County Treasurer, Respondents.

No. ED 89352.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 5, 2008.

James E. Mello, Jeffery T. McPherson, Matthew Scott Shorey, St. Louis, MO, for Appellant.

Ivan L. Schraeder, Michelle H. Basi, St. Louis, MO, Steven L. Wright, Columbia, MO, Franklin E. Foster, Nikki Loethen,

Jefferson City, MO, Steven E. Raymond, Shelbyville, MO, for Respondent.

## OPINION

GEORGE W. DRAPER III, Judge.

The City of Shelbina (hereinafter, "the City") appeals from the trial court's grant of summary judgment in favor of Shelby County, Missouri, et al. (hereinafter, "the County") on its petition seeking a writ of mandamus and declaratory judgment. The City raises two points on appeal. First, the City argues the trial court erred in entering summary judgment in the County's favor in that Ordinances No. 1094 and No. 1095 were enacted validly and the County failed to carry its burden of proving the City acted in excess of its powers by enacting the ordinances. Second, the City argues if the ordinances did contain defective portions, the severability clause contained in each ordinance would render the remainder of the ordinance valid in that the County failed to present any evidence the City would have refused to pass the ordinance in the absence of the invalid portion. We affirm.[1]

The facts are generally undisputed. The City created a tax increment financing (hereinafter, "TIF") commission in early 2003. The TIF Commission met on March 3rd and March 24th to review a draft proposal of a redevelopment plan[2] dated February 21, 2003, designating an area of the City as a redevelopment area.[3]  On

---

1. The County's motion to strike the City's brief and dismiss its appeal which was taken with the case is denied.

2. Section 99.805(12) RSMo (2000) defines a "redevelopment plan" as "the comprehensive program of a municipality for redevelopment intended by the payment of redevelopment costs to reduce or eliminate those conditions, the existence of which qualified the redevelopment area as a blighted area, conservation area, economic development area, or combination thereof, and to thereby enhance the tax bases of the taxing districts which extend into

the redevelopment area. Each redevelopment plan shall conform to the requirements of Section 99.810." All statutory references are to RSMo (2000) unless otherwise indicated.

3. Section 99.805(11) defines a "redevelopment area" as "an area designated by a municipality, in respect to which the municipality has made a finding that there exist conditions which cause the area to be classified as a blighted area, a conservation area, an economic development area, an enterprise zone pursuant ... or a combination

March 10, 2003, the City sent letters via certified mail informing certain taxing districts that a public hearing would be held on April 28, 2003, to discuss issues pertaining to the establishment of a TIF plan and district within the City limits. Similar letters were sent via certified mail to property owners within the City limits on March 21, 2003. The City enclosed a map outlining the purported TIF district with these letters. The City also submitted notice of the public meeting to The Shelbina Democrat, the City's local newspaper, on April 16, 2003 and April 23, 2003. The notice indicated the City had created a TIF Commission to assist the City in creating a redevelopment TIF district and plan, and encouraged anyone with comments to attend the hearing on April 28th.

At the time these notices were issued, the City had the February 21st draft of the proposed redevelopment plan. The redevelopment plan was not finalized until April 16, 2003. The finalized plan was discussed at the public hearing held by the TIF Commission and referenced at the Board of Aldermen meeting on May 13, 2003.

At the TIF Commission's public hearing on April 28, 2003, there were fifty-eight attendees, in addition to the members of the Commission. The minutes reflect there was a short presentation about the purpose of meeting, the role of the TIF Commission, what actions had taken place prior to the meeting, and a discussion about why TIF was needed in the City. According to the minutes, a planning consultant presented "maps associated with the [TIF] Plan, the [actual TIF redevelop-

ment] Plan, the Land Use Plan, and addressed the findings that were used to qualify the area for eligibility for TIF." There were seven questions asked and answered with respect to the TIF plan during the meeting. After concluding the public portion of the meeting, the TIF Commission voted unanimously to ratify the resolution regarding the redevelopment plan.

Subsequently, the City's Board of Aldermen met on May 13, 2003, to adopt Ordinances No. 1094 and No. 1095. Ordinance No. 1094 purported to designate a portion of the City as a redevelopment area, approve a redevelopment plan, and make related findings. Ordinance No. 1095 purported to approve the redevelopment area, the redevelopment plan, and a redevelopment project[4] area (hereinafter, "RPA1"), and adopt TIF within RPA1. Further, Ordinance No. 1095 sought to establish the City's special allocation fund. The City's Board of Aldermen unanimously voted to pass these ordinances.

The City submitted annual reports to the Missouri Department of Economic Development in 2003, 2004, and 2005 with respect to its TIF activities. The City also published financial reports every six months which included the City's increment revenue.

This litigation arose when the City filed a petition for writ of mandamus, declaratory judgment, and damages against the County and other parties, on December 30, 2005. The City asked the trial court to direct the County to pay the City the monies collected under the TIF. Further,

---

thereof, which area includes only those parcels of real property directly and substantially benefited by the proposed redevelopment project."

4. Section 99.805(13) defines a "redevelopment project" as "any development project

within a redevelopment area in furtherance of the objectives of the redevelopment plan; any such redevelopment project shall include a legal description of the area selected for the redevelopment project."

the City sought a declaratory judgment ordering the County to determine, remit, and account for all sums that were collected pursuant to the TIF. The City also sought damages.

After filing additional pleadings, counterclaims, and discovery, the City moved for partial summary judgment on October 2, 2006. Likewise, the County sought summary judgment on October 4, 2006. An extensive hearing was conducted on December 20, 2006, on the parties' respective motions.

The trial court issued its judgment on January 23, 2007. The trial court determined the pivotal issue was whether the City had any redevelopment projects at the time of the adoption of the purported ordinances. The trial court construed Section 99.845.1 to require the approval of a redevelopment project prior to enacting TIF ordinances. The trial court found, "[a] complete review of the redevelopment plan shows that it proposes no identifiable projects, but only concepts, which might, in time, become actual projects." Thus, the trial court concluded there were no genuine issues of material fact because the City did not have any redevelopment projects at the time the ordinances were enacted; only a general conceptual framework. Therefore, the passage of the ordinances was in excess of the City's authority and deemed void *ab initio.* The City now appeals.

In its first point, the City argues the trial court erred in entering summary judgment in the County's favor in that Ordinances No. 1094 and No. 1095 were enacted validly and the County failed to carry its burden of proving the City acted in excess of its powers by passing the ordinances. The City argues it complied with all statutory requirements, and therefore, the County is circumventing its statutory obligation to turn over the TIF mo-nies collected to the City. The County responds with a lengthy list of statutory deficiencies that it claims render the ordinances invalid.

It is well-settled that when considering an appeal from a grant of summary judgment, we review the record in the light most favorable to the nonmovant. *ITT Commercial Fin. v. Mid–America Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially *de novo. Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* A summary judgment movant has the burden of proof on to establish a legal right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 378. "The moving party bears the burden of establishing a right to judgment as a matter of law." *Powel v. Chaminade College Preparatory, Inc.,* 197 S.W.3d 576, 580 (Mo. banc 2006).

We must begin our analysis by determining whether the City complied with the TIF statute requirements. Statutory interpretation is purely a question of law. *Glasgow Enterprises, Inc. v. Bowers,* 196 S.W.3d 625, 631 (Mo.App. E.D.2006). When interpreting a statute, this Court must determine the intent of the legislature, give the language used its plain and ordinary meaning, and give effect to that intent, if possible. *Christensen v. American Food & Vending Services, Inc.,* 191 S.W.3d 88, 90 (Mo.App. E.D.2006). We presume the legislature intended every word, clause, sentence, and provision of a statute to have effect and did not insert superfluous language into the statute. *Abbott Ambulance v. St. Charles County Ambulance Dist.,* 193 S.W.3d 354, 358 (Mo. App. E.D.2006).

Section 99.845.1 states in pertinent part:

A municipality, *either at the time a redevelopment project is approved or, in the event a municipality has undertaken acts establishing a redevelopment plan and redevelopment project and has designated a redevelopment area* after the passage and approval of Sections 99.800 to 99.865 ... which acts are in conformance with the procedures of Sections 99.800 to 99.865, may adopt tax increment allocation financing by passing an ordinance.... (Emphasis added).

It is clear from the plain language of the statute that the legislature contemplated a municipality must take the step of either: (1) approving a redevelopment project; *or* (2) undertake acts that establish a redevelopment plan *and* a redevelopment project prior to enacting TIF ordinances. The City argues it has a valid redevelopment plan and the projects described therein were sufficient. The County argues at the time the ordinances were adopted, the City's redevelopment plan lacked a specified redevelopment project, rendering the ordinances invalid.

We need not decide the issue of whether the City's redevelopment plan met the list of requirements in Section 99.810.1 in that our review of the April 16th version of the redevelopment plan which was presented at the TIF Commission's public hearing reveals the City lacked any specific redevelopment project prior to enacting the ordinances. The redevelopment plan is replete with references to aspirational goals and conceptual frameworks that may be implemented in an effort to redevelop the City, but no specific projects are discussed, nor is an identifiable financial structure set forth.

There are several key examples: First, in the "Plan Purpose" section of the redevelopment plan, the City states the primary purpose of the plan is to "enable the City to select redevelopers to carry out the redevelopment program activities envisioned by the Plan." This section contemplates the redevelopment area *"will contain* multiple Redevelopment Project Areas (RPA) that *may be implemented* over a number of years. This Plan *assumes that multiple redevelopment projects will be undertaken* over the life of the Plan by the City or by one or more developers." (Emphasis added). Second, the City's plan suggests "[t]he redevelopment program for the Area ... *envisions* that redevelopment *will occur* through redevelopment projects that provide for the construction of new commercial, industrial and residential uses. The *program concept* is *intended* to foster the redevelopment of the area with quality uses that will generate increased tax revenues ..." (Emphasis added).

Most telling is the City's discussion of its desire to redevelop a portion of RPA1. The redevelopment plan states, "As of this writing, the City has solicited proposals for a portion of the Area located north of relocated Highway 36. As conceived, this proposal process is *intended* to result in a scenario where a property currently owned by the City *will be* redeveloped into highway-oriented commercial uses which *could include* a gas station, a restaurant, and possibly a hotel or other commercial uses." (Emphasis added). If a proposal is submitted, the City says "It is *anticipated* that as these projects are brought forward they will be presented to the Commission, if required, and subsequently, to the Board of Aldermen for approval...." (Emphasis added).

It is clear from the excerpts cited that the City did not have any specific redevelopment projects approved nor had undertaken acts to establish a redevelopment project as required under Section 99.845.1. Since Section 99.845.1 contemplated the adoption of a redevelopment project prior

to enactment of TIF ordinances, and in light of the absence of a redevelopment project at that time, we deem Ordinances No. 1094 and No. 1095 void *ab initio*. Therefore, we need not address the County's lengthy list of other alleged deficiencies. Moreover, we need not discuss the City's second point with respect to the severability clause contained in the ordinances. Point denied.

The trial court's judgment is affirmed.

MARY K. HOFF, P.J., and SHERRI B. SULLIVAN, J., concur.