

# SUPREME COURT OF MISSOURI
## en banc

IN RE THE MATTER OF )
TARYN WILLIAMS, )
                               )
                 Respondent, )
                               )
                  v. )        No. SC93653
                               )
STATE OF MISSOURI, )
DEPARTMENT OF SOCIAL SERVICES, )
CHILDREN'S DIVISION, )
CHILD ABUSE AND NEGLECT )
REVIEW BOARD, )
                               )
                   Appellant. )

APPEAL FROM CIRCUIT COURT OF JACKSON COUNTY
The Honorable Marco A. Roldan, Judge

*Opinion issued July 8, 2014*

The Children's Division of the Missouri Department of Social Services

("Children's Division" or "Division") appeals from the trial court's judgment ordering

the Division not to include Taryn Williams' ("Williams") name on the central registry of

child abuse and neglect perpetrators. The trial court based its ruling solely on the ground

that the Children's Division failed to comply with the applicable time limitations set forth

in sections 210.145 and 210.152, RSMo Supp. 2010.[1]  For the reasons set forth herein

and in this Court's decision in the companion case of *Frye v. Department of Social

Services*, ___ S.W.3d ___ (SC93471) (Mo. banc 2014), the trial court's judgment in favor

of Williams is vacated, and the matter is remanded.

## Factual Background

The Children's Division and Williams stipulated to the underlying facts of this

case.  On October 13, 2010, the Children's Division received a child abuse hotline call

reporting the sexual maltreatment of a minor child ("Child") by Williams.  At the time of

the incident, Williams had the care, custody, and control of Child because she was a

volunteer swim coach for Child's swimming team.  It was alleged that Williams had

sexual intercourse, at least twice, and oral sex, at least once, with Child.  Williams sent

Child multiple sexually explicit text messages.  Child complied with a request by

Williams to send her a nude picture of himself.  Williams admitted to a sexual

relationship with Child.

The Children's Division began its investigation the day it received the hotline call

against Williams.  On November 13, 2010, the 31st day after the investigation was

opened, the Children's Division updated its information system, stating its investigation

would be delayed beyond the 30-day limit set forth in section 210.145.14.  The

Children's Division cited an ongoing "co-investigation" with police as being "good

---

[1] All statutory citations are to RSMo Supp. 2013, with the exception of citations to
§§ 210.145.14 and 210.152.2.  Citations to these statutes are to RSMo Supp. 2010, which was
the version in effect when the Division finished its investigation of Williams.

cause" to extend its investigation. On February 18, 2011, the Children's Division prepared its written notice of its determination. On February 22, 2011, approximately 133 days after beginning its investigation, the Children's Division notified Williams that it substantiated the report of abuse.

Williams timely contested the Children's Division's determination and requested a review by the Child Abuse and Neglect Review Board ("Board"). The Board upheld the Children's Division's decision.

Williams then filed a timely petition *de novo*, seeking judicial review of the Board's decision. The trial court determined that the Children's Division had no good cause to extend its investigation beyond the initial 30-day period. The trial court noted the Children's Division did not inform Williams of the outcome of its investigation until after the 90-day statutory period in section 210.152.2. The trial court's judgment determined the statutory time limits contained in sections 210.145 and 210.152 are mandatory time limits for completing a child abuse and neglect investigation and for providing written notice to the alleged perpetrator of the investigation's results. The trial court's judgment further stated that failure to comply with these time limits can implicate an alleged perpetrator's due process rights as guaranteed by article I, section 10 of the Missouri Constitution. Finally, the trial court ordered the Division not to include Williams' name on the central registry of child abuse and neglect perpetrators.

The Children's Division seeks appellate review. After opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

3

## Standard of Review

The trial court's judgment will be upheld unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This Court will only reverse if it is left with the firm belief the judgment was wrong. *In re S.M.H.*, 160 S.W.3d 355, 362 (Mo. banc 2005). This Court will affirm the trial court's judgment if it is correct under any reasonable theory supported by the evidence. *Martin v. Martin*, 334 S.W.3d 741, 744 (Mo. App. 2011); *Allen v. Allen*, 330 S.W.3d 838, 841 (Mo. App. 2011); *Bolt v. Giordano*, 310 S.W.3d 237, 242 (Mo. App. 2010).

## Analysis

After a full investigation, the Children's Division determined that the hotline report concerning Williams' acts of child abuse, including that she sent the child nude photographs of herself and had sexual intercourse and oral sex with the child, was supported by a preponderance of the evidence. Even though this determination was affirmed by the Board, the trial court never reached the question of whether this determination was supported by the evidence. Instead, it determined that (regardless of the facts) the Division cannot list Williams on the central registry because the hotline report was deemed unsubstantiated when the Division failed to finish its investigation and notify her of its determination within 90 days.

A similar judgment was vacated in the companion case of *Frye v. Department of Social Services*, ___ S.W.3d ___ (SC93471) (Mo. banc 2014), handed down this same day, and the reasoning of that case controls the disposition of this one. The sanction

4

imposed by the trial court as a consequence of the Division's failure to comply with the deadlines in section 210.152.2 and 210.145 never was approved by – and perhaps never even was envisioned by – the legislature. Accordingly, the trial court's actions were contrary to this Court's precedent and contrary to the legislature's purposes and procedures embodied in the Child Abuse Act, §§ 210.109 to 210.188.

This case also presents an issue that was not raised in *Frye*. Pursuant to section 210.145.14, the Children's Division must identify in its information the "good cause" that required it to exceed the 30-day limit on investigations. Here, the trial court found the Division's "good cause" was insufficient and, on that basis (as well as the 90-day deadline at issue in *Frye*), determined that the Division cannot list Williams on the central registry because the hotline report concerning her actions must be deemed unsubstantiated.

The Division noted that it had good cause for continuing the investigation past 30 days because it was waiting for information from the local police department that was supporting the Division's investigation pursuant to section 210.145.5.[2] The trial court found this basis was not "good cause" because, in the end, this information was not the basis for the Division's determination.

---

[2] Section 210.145.5 provides: "The local office shall contact the appropriate law enforcement agency immediately upon receipt of a report which division personnel determine merits an investigation and provide such agency with a detailed description of the report received. In such cases the local division office shall request the assistance of the local law enforcement agency in all aspects of the investigation of the complaint. The appropriate law enforcement agency shall either assist the division in the investigation or provide the division, within twenty-four hours, an explanation in writing detailing the reasons why it is unable to assist."

As set forth in *Frye*, even though a statute unambiguously requires that an administrative agency "shall" meet a particular deadline or similar mandate, courts are not free to impose a sanction when the agency fails to comply with that obligation unless the legislature has approved that sanction and its use in such circumstances. *See Farmers & Merchants Bank & Trust Company v. Director of Revenue*, 896 S.W.2d 30, 33 (Mo. banc 1995). Here, the sanction imposed by the trial court – treating the hotline report as unsubstantiated and barring the Children's Division from completing its investigation or making the determination the statutes require it to make – has not been approved by the legislature. The Division's obligation is stated in section 210.145.14, which provides in pertinent part:

> The division shall complete all investigations within thirty days, ***unless good cause for the failure to complete the investigation is documented in the information system***. If the investigation is not completed within thirty days, the information system shall be updated at regular intervals and upon the completion of the investigation. The information in the information system shall be updated to reflect any subsequent findings, including any changes to the findings based on an administrative or judicial hearing on the matter.

§ 210.145.14 (emphasis added).[3]

Clearly, nothing in this statute approves the sanction imposed by the trial court for failing to do what this statute says the Division "shall" do. In fact, the Division did everything that this statute says the Division "shall" do, i.e., it documented its good cause for failing to complete the investigation within 30 days in its information system.

_____

[3] This section was renumbered in 2012 so what is referred to in this opinion as subsection 14 is now subsection 15.

The trial court imposed its sanction not because the Division failed to do what section 210.145.14 requires it to do, but because – in the course of the *de novo* review authorized by section 210.152.6 – the court determined that the grounds logged into the information system did not constitute "good cause." This was error. Nothing in section 210.152.6 allows a trial court to review – *de novo* or otherwise – the good cause identified in the Division's information system pursuant to section 210.145.14. Section 210.152.6 only authorizes the trial court to review the decision of the Board. It does not authorize courts to directly review the Division's determination as to whether the hotline report was substantiated, and it certainly does not authorize courts to review the Division's good cause determinations under section 210.145.14.

Section 210.152.4 authorizes the Board to review the "determination of abuse or neglect by the division." In particular, section 210.152.5 provides that the Board "shall sustain the division's determination if such determination was … supported by a preponderance of the evidence … and is not against the weight of such evidence." Nowhere in section 210.152.4 or .5 is the Board authorized to review the Division's good cause determinations, and nothing in section 210.152.6 authorizes courts to review anything but "the decision of the child abuse and neglect review board." Because this review is *de novo*, this Court has held that section 210.152.6 allows a trial court to evaluate **evidence** that was not presented to the Board. *Jamison v. Department of Social Services,* 218 S.W.3d 399, 415 (Mo. banc 2007). But neither *Jamison* nor the language

of section 210.152.6 allows the trial court to review *issues*, e.g., good cause, that the Board did not decide and had no statutory authority to decide.[4]

Even if the trial court had authority to second-guess the Division's good cause for extending the investigation beyond 30 days, it cannot do so merely on the basis of hindsight. Probable cause to issue a search warrant cannot be evaluated on the basis of the evidence that warrant produced. The same logic applies here. The Division did not know on day 30 what the basis for its determination would turn out to be. But the evidence in this case shows that – at the time the decision to extend the investigation was made – there was an ample and reasonable basis for the Division to believe that additional information was needed and that this information was in the possession (or within the reach) of the law enforcement agency serving as the Division's co-investigator.

Accordingly, for the reasons set forth above, and in the Court's decision in *Frye*, decided contemporaneously herewith, the trial court's judgment in favor of Williams is vacated, and the matter is remanded.



PAUL C. WILSON, JUDGE

Russell, C.J., Breckenridge and Stith, JJ., concur; Draper, J., dissents in separate opinion filed; Fischer and Teitelman, JJ., concur in opinion of Draper, J.

---

[4] Courts can review constitutional questions on judicial review even though such questions were not – and could not have been – decided by the Board. But Williams' claims about good cause are not constitutional claims, and, to the extent her due process claims relate to the question of good cause, those claims lack any merit for the reasons set forth in *Frye*.



IN RE THE MATTER OF          )
TARYN WILLIAMS,              )
                            )
     Respondent,        )
                            )
vs.                         )    No. SC93653
                            )
STATE OF MISSOURI,          )
DEPARTMENT OF SOCIAL SERVICES, )
CHILDREN'S DIVISION,        )
CHILD ABUSE AND NEGLECT     )
REVIEW BOARD,               )
                            )
     Appellant.         )

## DISSENTING OPINION

I respectfully dissent from the principal opinion in that I believe the trial court properly entered judgment in favor of Taryn Williams (hereinafter, "Williams"), ordering her name not be included on the central registry of child abuse and neglect perpetrators because the Children's Division of the Missouri Department of Social Services (hereinafter, "the Children's Division") failed to comply with the applicable time limitations set forth in sections 210.145 and 210.152, RSMo Supp. 2005. The Children's Division failed to comply with the statutory time limits, which I believe divested it of authority to continue to take action. For the reasons set forth below and in my dissent in

*Frye v. Department of Social Services*, __ S.W.3d __ (SC93471) (Mo. banc July 8, 2014), I would affirm the judgment of the trial court.

The Children's Division is a statutory creation, and its authority is limited to that granted to it by the legislature. *State ex rel. Missouri Pub. Defender Comm'n v. Waters*, 370 S.W.3d 592, 598 (Mo. banc 2012); *see also In re C.W.,* 211 S.W.3d 93, 97 (Mo. banc 2007). Accordingly, it is constrained by its articulated statutory authority. *Hessel v. Missouri Dept. of Social Services, Children's Div.*, 400 S.W.3d 813, 816 (Mo. App. E.D. 2013) (*citing State ex rel. MoGas Pipeline, LLC v. Missouri Pub. Serv. Comm'n*, 366 S.W.3d 493, 496 (Mo. banc 2012)). Looking at the entirety of our statutory scheme, I believe the legislature intended only to provide the Children's Division ninety days in which to take action against an alleged perpetrator. Since the Children's Division failed to act within that statutorily articulated timeframe, it had no authority to place Williams' name on the central registry.

Section 210.145.14 provides that after receiving a report of abuse or neglect, the Children's Division "shall complete all investigations within thirty days, unless good cause for the failure to complete the investigation is documented in the information system. If the investigation is not completed within thirty days, the information system shall be updated at regular intervals and upon the completion of the investigation." Section 210.152.2 provides that "[w]ithin ninety days after receipt of a report of abuse or neglect that is investigated, the alleged perpetrator …, shall be notified in writing of any determination made by the [Children's D]ivision based on the investigation." This section then delineates that "the notice shall advise either:

2

(1) That the [Children's D]ivision **has** determined … that abuse or neglect exists and that the division shall retain all identifying information regarding the abuse or neglect; that such information shall remain confidential and will not be released except to law enforcement agencies, prosecuting or circuit attorneys, or as provided by section 210.150; that the alleged perpetrator has sixty days from the date of the receipt of the notice to seek reversal of the [Children's D]ivision's determination through a review by the child abuse and neglect review board as provided in subsection 3 of this section; or

(2) That the [Children's D]ivision **has not** made a probable cause finding or determined by a preponderance of the evidence that abuse or neglect exists."

Section 210.152.2 (emphasis added). The legislature did not bestow a provision for an extension of time for further investigation in this section as it did in section 210.145.14.

The legislature also compels the Children's Division to notify the alleged perpetrator with the written description of the investigation process once it opens an investigation. Section 210.183.1. Section 210.183.1 contains language drafted by the legislature explaining the process of the investigation to the alleged perpetrator by putting sections 210.145 and 210.152 into plain words for the public. The Children's Division's notification letter must be drafted in substantially the same form as set forth in section 210.183.1. This section states that the Children's Division "shall make every reasonable attempt to complete the investigation within thirty days." If the investigation is not completed within thirty days, "within ninety days **you will receive** a letter from the [Children's] Division which will inform you of one of the following:

(1) That the [Children's] Division has found insufficient evidence of abuse or neglect; or

3

(2) That there appears to be by a preponderance of the evidence reason to suspect the existence of child abuse or neglect in the judgment of the [Children's] Division and that the [Children's] Division will contact the family to offer social services."

Section 210.183.1 (emphasis added). This notification language tracks the statutory language, delineating the Children's Division's authority, in sections 210.145.14 and 210.152.

Justice Sedgwick concisely sets forth the general rules of interpreting statutes and determining when a statute should be treated as directory:

The intention of the Legislature should control absolutely the action of the judiciary; where that intention is clearly ascertained, the courts have no other duty to perform than to execute the legislative will, without any regard to their own views as to the wisdom or justice of the particular enactment.

The means of ascertaining that intention are to be found in the statute itself, taken as a whole with all its parts,-- in statutes on the same subject, antecedent jurisprudence and legislation, contemporaneous and more recent exposition, judicial construction and usage; and to the use of these means, and these alone, the judiciary is confined. No other extrinsic facts are in any way to be taken into consideration.

It is not until these means fail, and until the attempt to ascertain the legislative intent is hopeless, that the judiciary can with propriety assume any power of construing a statute, strictly or liberally, with reference either to the particular character of the statute, or to their own ideas of policy or equity. Where the meaning of the statute, as it stands, is clear, they have no power to insert qualifications, engraft exceptions, or make modifications, under the idea of providing for cases in regard to which the Legislature has omitted any specific provisions.

Theodore Sedgwick, *A Treatise on the Rules which Govern the Interpretation and Construction of Statutory and Constitutional Law*, at 325-26 (2d ed. 1874) (hereinafter, "*Sedgwick*").[1]

Section 210.152.2 provides that "[w]ithin ninety days after receipt of a report of abuse or neglect that is investigated, the alleged perpetrator …, shall be notified in writing of any determination made by the division based on the investigation." This section then delineates "the notice shall advise either:

> (1) That the [Children's D]ivision **has** determined … that abuse or neglect exists and that the division shall retain all identifying information regarding the abuse or neglect; that such information shall remain confidential and will not be released except to law enforcement agencies, prosecuting or circuit attorneys, or as provided by section 210.150; that the alleged perpetrator has sixty days from the date of the receipt of the notice to seek reversal of the [Children's D]ivision's determination through a review by the child abuse and neglect review board as provided in subsection 3 of this section; or
>
> (2) That the [Children's D]ivision **has not** made a probable cause finding or determined by a preponderance of the evidence that abuse or neglect exists."

Section 210.152.2 (emphasis added).

The legislature did not bestow a provision for an extension of time for further investigation in this section as it did in section 210.145.14. The legislature also mandated that the Children's Division must inform the alleged perpetrator within ninety days of one of two possible outcomes.

---

[1] The principles expounded upon in Sedgwick's treatise, while applicable, are difficult for citizens to locate; the Missouri's Supreme Court library does not maintain a copy of any of his treatises for citizens. However, this Court still recognizes his writing as influential in our decision-making. *See State v. Honeycutt*, 421 S.W.3d 410, 419-20 (Mo. banc 2013).

5

In this case, the initial hotline call reporting Williams' conduct occurred on October 13, 2010. The Children's Division informed Williams, outside of the initial thirty days contemplated by section 210.145.14, that its investigation would be delayed for "good cause" in that it was involved in a "co-investigation" with police. The Children's Division was unable to make a decision and inform Williams until more than one hundred days later, well beyond the statutory period contemplated by section 210.152.2. Yet, the Children's Division admitted it made its final determination based upon the information it gathered during the first thirty days of its investigation. The Children's Division failed to comply with the statutory time periods in either section 210.145.14 or section 210.152.2, but it claims that it is entitled to do so to protect Missouri's children.

The principal opinion's reliance on its analysis in *Frye* curtails the actual analysis that should be performed by this Court when attempting to determine whether a statute is mandatory or directory by only noting the lack of a penalty provision within section 210.152.2. "Directory provisions are not intended by the legislature to be disregarded, but where the consequences of not obeying them in every particular are not prescribed the courts must judicially determine them." *State ex rel. Ellis v. Brown*, 33 S.W.2d 104, 107 (Mo. banc 1930) (*quoting* 25 R. C. L. Sec. 14 pp. 766, 767).[2] Our "courts recognize that the term ['shall'] is frequently used carelessly and indiscriminately, and they have not

---

[2] The principal opinion neglects to look at the other statutory provisions within the same act, covering the same procedures and authority granted to the Children's Division, thereby failing to give any meaning to every statutory provision enacted by our legislature.

6

hesitated to hold that the intent of the legislative enactment will prevail over the literal sense of its terms." *Howard v. Banks*, 544 S.W.2d 601, 604 (Mo. App. St. Louis Dist. 1976). "There is no absolute or universal rule by which statutory provisions may be distinguished and classified as mandatory or directory." *State ex rel. Hopkins v. Stemmons*, 302 S.W.2d 51, 53 (Mo. App. Spring. Dist. 1957). "In the determination of this question, as of every other question of statutory construction, the prime object is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject of legislation and the general object intended to be accomplished." *Brown*, 33 S.W.2d at 107 (*quoting* 25 R. C. L. Sec. 14 pp. 766, 767); *see also Hopkins*, 302 S.W.2d at 53; *State ex rel. Rogersville Reorganized School Dist. No. R-4, of Webster Cnty., v. Holmes*, 253 S.W.2d 402, 404 (Mo. banc 1952) ("In determining whether either of the provisions of the schedule with which each relator failed to comply is mandatory or directory, the prime object is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject legislation and the general object intended to be accomplished.") (internal quotation omitted).

"As with all matters of statutory interpretation, determining if the word 'shall' is mandatory or directory requires courts to review the context of the statute and to ascertain legislative intent*." State v. Teer*, 275 S.W.3d 258, 261 (Mo. banc 2009). When engaging in statutory construction, the primary purpose is to ascertain the legislature's intent from the language used and to give effect to that intent if possible. *Beard v. Missouri State Employees' Retirement System*, 379 S.W.3d 167, 169 (Mo. banc 2012). This Court presumes the legislature intended every word, clause, sentence, and provision of a statute

7

to have effect and did not insert superfluous language into the statute. *City of Shelbina v. Shelby County*, 245 S.W.3d 249, 252 (Mo. App. E.D. 2008). "The construction of statutes is not to be hyper-technical, but instead is to be reasonable and logical and [to] give meaning to the statutes." *Lewis v. Gibbons*, 80 S.W.3d 461, 465 (Mo. banc 2002) (internal quotations omitted).

"Provisions of an entire legislative act must be construed together and, if reasonably possible, all provisions must be harmonized." *Chester Bross Const. Co. v. Missouri Dept. of Labor and Indus. Relations, Div. of Labor Standards*, 111 S.W.3d 425, 427 (Mo. App. E.D. 2003) (quoting *St. Louis County v. B.A.P., Inc.*, 25 S.W.3d 629, 631 (Mo. App. E.D. 2000)). Statutory provisions relating to the same subject matter "must be considered in context and sections of the statutes in *pari materia*, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words." *Harpagon MO, LLC v. Bosch*, 370 S.W.3d 579, 584 (Mo. banc 2012) (quoting *South Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009)); *see also Sedgwick* at 209 ("It is well settled, that in construing a doubtful statute, and for the purpose of arriving at the legislative intent, all acts on the same subject-matter are to be taken together and examined, in order to arrive at the true result.") This allows the legislation to be read consistently and harmoniously. *Crawford v. Div. of Employment Sec.*, 376 S.W.3d 658, 664 (Mo. banc 2012). "The rule that statutes in *pari materia* are to be consulted for the construction of each other, holds good, though some of the statutes may have expired, or even been repealed, and whether they are referred to or not." *Sedgwick* at 212. Statutes are enforced as they are written, not as they might

have been written.  *Turner v. School Dist. of Clayton*, 318 S.W.3d 660, 667 (Mo. banc 2010).  Further, this Court presumes the legislature is aware of the existing law.  *Id.*

Our legislature created the statewide child abuse and neglect registry to "promote the safety of children … by conducting investigations … and providing services in response to reports of child abuse or neglect."  Section 210.109.2; *Jamison v. State, Dept. of Social Services, Div. of Family Services*, 218 S.W.3d 399, 402-03 (Mo. banc 2007).  The central registry is a non-public list of people who committed child abuse or neglect.  Sections 210.110(3) and 210.150.2.  The central registry provides "a means to protect both victims of child abuse and other children with whom a perpetrator of abuse or neglect might come into contact by ensuring that information about cases of abuse is available to individuals and entities responsible for caring and protecting children."  *Pope v. Child Abuse and Neglect Review Bd.*, 309 S.W.3d 362, 366 (Mo. App. E.D. 2010).  There is limited access to the central registry.  *Hessel*, 400 S.W.3d at 817 n.2; *see* section 210.150.

When a hotline call is received, the Children's Division is charged with opening a thirty-day investigation.  Section 210.145.14.  The legislature clearly recognized that some investigations may have "good cause" to be extended beyond the initial thirty-day investigation period because the legislature included the qualifying language of "good cause."  *Id.*  The legislature promulgated a procedure, requiring the Children's Division to update the database with its progress on the investigation after the initial thirty-day period.  *Id.*  The legislature also required that the alleged perpetrator be given written notice of the investigative procedure, which states that the investigation should be

9

completed within thirty days, but may be extended to ninety days. There is no additional provision for a lengthier investigation. Section 210.183.1. After the initial investigatory period, the legislature directs that the Children's Division *within ninety days shall* provide notice to the alleged perpetrator that either the Children's Division finds by a preponderance of the evidence that abuse or neglect exists or that the Children's Division has not determined by a preponderance of the evidence that abuse or neglect exists. Section 210.152.2.

Section 210.152.2 does not state what consequence will ensue if the Children's Division fails to provide the alleged perpetrator a written determination of its investigation within ninety days. The principal opinion believes that, because there is no delineated consequence from failing to inform an alleged perpetrator of its decision within ninety days, section 210.150.2 should be construed as only a directory statute and the Children's Division does not need to comply with the statutory deadline.[3] *See* and *Cf Farmers & Merchants Bank & Trust Co. v. Dir. of Revenue, State of Mo.*, 896 S.W.2d 30, 33 (Mo. banc 1995) (construing only one statute and not requiring reference to any other provision within the same act).

If section 210.152.2 were to be read in isolation, the "shall" without more could be construed as directory because there is no delineated consequence for failing to meet the ninety-day deadline. However, by reading section 210.152 in *pari materia* with sections

---

[3] This Court has found reversible error by the circuit court in a termination of parental rights hearing when it failed to comply strictly with section 211.455.3, a section that includes the word "shall" but does not include a penalty provision. *In re C.W.*, 21 S.W.3d at 98 (abrogated on other grounds by *In re B.H.*, 348 S.W.3d 770 (Mo. banc 2011)). *See also In re A.H.*, 169 S.W.3d 152, 158 (Mo. App. S.D. 2005) (same).

10

210.145 and 210.183, looking at the entire legislative act, and harmonizing its provisions, it is clear the legislature intended the language to be mandatory. *See Chester Bross*, 111 S.W.3d at 427; *Garzee v. Sauro*, 639 S.W.2d 830, 832 (Mo. 1982) (finding a genuine issue of fact remained when reconciling two statutes regarding giving notice for a real estate sale, and stating, "giving the statute a directory meaning would imply that the publication of notice of foreclosure in section 141.430 satisfies the notice requirements for in rem proceedings under the due process clause of the Missouri and United States constitutions.… [W]e cannot interpret section 141.440 as directory only.")

The Children's Division argues this Court should **infer** it has the authority to extend the ninety-day limit set forth in section 210.152 for written notification of an investigation's outcome, if "good cause" exists.[4]  The Children's Division asserts that there is "good cause" to continue its investigation because it seeks to protect Missouri's children.  While this seems a laudable goal, the Children's Division is a statutory creature and is vested only with the express authority bestowed to it by our legislature, which protects all of our citizenry.

Yet, the principal opinion states that to enforce the written statutory timeframe would serve no one because the Children's Division would stop its investigation as soon as allegations are substantiated.  The principal opinion's willingness to allow an administrative agency to continue any investigation in perpetuity will only be a disservice to those it is charged to protect.  At no time prior to the Children's Division

---

[4] The Children's Division raises its "good cause" argument for the first time to this Court. Rule 83.08(b).

11

substantiating an allegation of abuse are children protected. Until an investigation is completed and a perpetrator is listed on the central registry, that perpetrator is at liberty to have continued free access to children. Missouri's children are not protected from those who seek to harm them by a lengthy investigation process. Had the legislature wished to allow the Children's Division to have an unlimited amount of time to keep investigations on alleged perpetrators open, as argued by the principal opinion, it could have placed the same "good cause" language in section 210.152.2.[5]

Similarly, section 210.183.1 states that the Children's Division will make every reasonable effort to complete the investigation within thirty days, but that *"[w]ithin ninety days you will receive a letter from the [Children's] Division which will inform you of"* its decision. (Emphasis added). This statutory language supports interpreting "shall" in section 210.152 as the legislature's intent to create a mandatory directive and not allow the Children's Division to rest on its laurels rather than pursuing every investigation to a rapid conclusion to protect Missouri's children.[6]

Finally, this Court notes that the legislature modified section 210.145.14, RSMo Supp. 2007, and section 210.152, RSMo Supp. 2011. Statutory amendments can further elucidate the legislature's intent. *City of Columbia v. Henderson*, 399 S.W.3d 493, 497

---

[5] An alleged perpetrator has no due process rights during the course of the Children's Division's limited investigation. *Jamison*, 218 S.W.3d at 410. Providing the Children's Division with an unlimited amount of time to open files on and investigate alleged perpetrators is tantamount to authorizing an unlimited investigation with no protection for Missouri children.

[6] The central registry is designed not only to protect children within families but also to protect children who are entrusted to others for care in a daycare or school setting. A lengthy delay in adding a perpetrator's name to the central registry only allows that perpetrator more access to children, thereby further endangering all children.

(Mo. App. W.D. 2013); *Anderson ex rel. Anderson v. Ken Kauffman & Sons Excavating, L.L.C.*, 248 S.W.3d 101, 109 (Mo. App. W.D. 2008). "When the legislature amends a statute, it is presumed to have intended the amendment to have some effect." *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992).

Section 210.145.14, RSMo Supp. 2007, was amended to provide that in addition to extending an investigation for more than thirty days for "good cause" that "[i]f a child involved in a pending investigation dies, the investigation shall remain open until the [Children's D]ivision's investigation surrounding the death is completed."

The legislature made it clear that the death of a child permits the Children's Division's investigation to continue indefinitely until its conclusion. Were the term "shall" to be merely directory, there would have been no need to legislate that an investigation could extend indefinitely in only one circumstance. This amendment to the statute is further evidence that the legislature intended to treat the death of a child differently from all other cases of alleged abuse and neglect by extending the investigatory time indefinitely. The plain language of the statute in this case demonstrates that the legislature intended to limit the time for which the Children's Division could conduct an investigation for abuse or neglect.

Our legislature added subsection 3 to section 210.152 in 2011, allowing the Children's Division to reopen a case

> for review at the request of the alleged perpetrator, the alleged victim, or the office of the child advocate if new, specific, and credible evidence is obtained that the [Children's D]ivision's decision was based on fraud or misrepresentation of material facts relevant to the [Children's D]ivision's decision and there is credible evidence that absent such fraud or

13

misrepresentation the [Children's D]ivision's decision would have been different.

This further clarifies the legislature's intent to only provide the Children's Division a maximum of ninety days to complete its investigation and notify the alleged perpetrator of its decision. The amendment now demonstrates that the investigation may be reopened to further protect children should there be new, specific, credible evidence that the Children's Division's decision was based on fraud or a misrepresentation of evidence.

The Children's Division's argument, seeking to extend its investigation and decision making indefinitely, adds "good cause" language to section 210.152 that does not exist. This Court will not interpret a statute as a party wishes it were written. *Turner*, 318 S.W. 3d at 667. This Court will not add statutory language where it does not exist; this Court merely interprets the statutory language as written by the legislature. *Ryder Student Transp. Services, Inc. v. Dir. of Revenue, State of Mo.*, 896 S.W.2d 633, 635 (Mo. banc 1995). It is obvious the legislature knew how to grant the Children's Division an extension of the statutory time limitations because it did so in section 210.145 by inserting the "good cause" language and a procedure to follow when the investigation was not completed. The legislature reiterated its intent that no investigation should extend beyond ninety days by promulgating the notice to the alleged perpetrator, providing he or she will be notified of the Children's Division's decision within ninety days. Section 210.183. Finally, the legislature's subsequent statutory amendments to sections 210.145.14, RSMo Supp. 2007, and 210.152.3, RSMo Supp. 2011, further indicate the legislature's intent to limit the time of the Children's Division investigations

14

in the normal course of its business. The legislature fully articulated a statutory scheme to investigate and protect all Missouri's children in a prompt and efficient manner. *See Jamison*, 218 S.W.3d at 410.

## Conclusion

Accordingly, I believe the Children's Division's failure to operate within the enunciated statutory time frames divested it of the authority to take any other action in this case.[7] I would affirm the trial court's judgment.

_____
GEORGE W. DRAPER III, JUDGE

---

[7] The principal opinion characterizes the outcome of this dissenting opinion as creating a sanction. Yet, this legally sound and historically approved approach does no such thing. Merely, the Children's Division is required to follow the legislative mandates, and its failure to do so divests it from further action; this is the result of the Children's Division's failure to comply with the statutes, not a court-created sanction. To protect Missouri's children, the legislature has required diligence and only authorized the Children's Division to act during a statutorily created time period; its authority to act is limited to that granted to it by the legislature. *State ex rel. Missouri Pub. Defender Comm'n*, 370 S.W.3d at 598; *In re C.W.,* 211 S.W.3d at 97.